UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CONSTELLATION BRANDS, INC.,            DECISION AND ORDER

              Plaintiff,            14-CV-6272 CJS

   -v-

KESTE, LLC,

              Defendant.
_____

APPEARANCES

| | |
|---|---|
| For Plaintiff: | Brittany Trulaine Simon, Esq.<br>Kathryn Anne Furfari Martinez<br>Nixon Peabody LLP<br>1300 Clinton Square<br>Rochester, New York 14604 |
| For Defendant: | James P. Domagalski, Esq.<br>Kimberly A. Colaiacovo, Esq.<br>Hiscock & Barclay LLP<br>1100 M&T Center<br>Buffalo, New York 14203<br><br>Jillian Rae Harris, Esq.<br>Jackson Walker, LLP<br>901 Main Street, Suite 6000<br>Dallas, Texas 75202 |

INTRODUCTION

    This is a diversity action for breach of contract and tort under New York State law. Now before the Court is Defendant's motion (Docket No. [#10]) for partial dismissal of certain damages claims, pursuant to FRCP 12(b)(6). The application is granted.

BACKGROUND

The following information from the Complaint [#1] is presumed to be true for purposes of this Decision and Order.  In March 2011, the parties agreed that Defendant would build a Global Intranet for Plaintiff, using Oracle Corporation ("Oracle") software and products, in exchange for $509,750.00.  Plaintiff chose Defendant for this job in part because Defendant represented that it had special expertise in using Oracle's technology.  On March 28, 2011, the parties executed a written "Master Independent Contractor Agreement" ("the contract").  Of particular significance to the instant motion is paragraph seven of the contract, entitled "Limitation on Liability," that states in pertinent part:

> [7]a. *No Incidental or Consequential Damages*. . . . IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, INDIRECT OR PUNITIVE DAMAGES ARISING IN ANY WAY OF OF THE SERVICES, A DELIVERABLE FOR THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PROFIT, LOST REVENUE, LOSS OF USE, LOSS OF DATA, COSTS OF RECREATING LOST DATA, THE COST OF ANY SUBSTITUTE EQUIPMENT, PROGRAM, OR DATA, OR CLAIMS BY ANY THIRD PARTY, WHETHER ARISING OUT OF CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE.
>
> [7]b. *Limitation of Liability*. . . . THE CUMULATIVE, AGGREGATE LIABILITY OF KESTE TO CLIENT FOR ALL CLAIMS RELATED TO THE SERVICES, DELIVERABLES AND THIS AGREEMENT, WHETHER ARISING OUT OF CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE, WILL NOT EXCEED THE GREATER OF (I) THE AMOUNT OF FEES PAID BY CONSTELLATION TO KESTE FOR THE SERVICES PERFORMED AND/OR DELIVERABLES  DELIVERED UNDER ANY [STATEMENT OF WORK] ["(]SOW[")] GIVING RISE TO A CLAIM UNDER THIS ARTICLE 7; OR (II) TWO HUNDRED-FIFTY THOUSAND DOLLARS ($250,000).

Docket No. [#10-2] at p. 8.  Together, these clauses indicate, first, that Defendant has no liability whatsoever for any consequential or punitive damages, and second, that Defendant's total monetary liability for any allowable type of damages is limited to the amounts set forth therein.

Plaintiff hired Defendant to create a global company intranet, for use by Plaintiff's employees, including "a content management system [with which Plaintiff] could regularly create and update content to be displayed on the intranet," that would "simplify and streamline technical and content administration and maintenance while providing a single location for all internal company information." Complaint ¶ ¶ 17-18.  The specifics of the project were spelled out in the contract and in a separate document, referenced earlier, entitled "Statement of Work" ("SOW").

While Defendant was working on the project, Plaintiff pointed out various problems and "bugs" in Defendant's work, including the fact that the intranet website's "pages took multiple seconds to load, well beyond a commonly acceptable page load time." *Id*. at ¶ 36. Plaintiff also complained that the intranet's "content management features and processes were overcomplicated" and "onerous." *Id*. at ¶ 38.  For example, the website "required [Plaintiff's] content managers to spend upwards of fifty steps, totaling eighty minutes, to update simple site content." *Id*. at ¶ 39.  The pleading alleges, however, that rather than fix those serious problems immediately, Defendant instead focused on addressing more "cosmetic" problems. *Id*. at ¶ 42.  At the same time, though, Defendant acknowledged that the more serious problems existed, and assured Plaintiff that it would fix them. *See, id.* at ¶ 48 ("Keste represented that it could and would fix the Website's fundamental content management and performance issues to meet Constellation's expectations."); *see also, id*.

at ¶ ¶ 50-52 (Defendant indicated that it would make the website pages load faster, and would simplify the content-management process).

The contract initially indicated that Defendant would complete the work by July 26, 2013, but as of October, 2013, the work was not completed. However, the parties amended the agreement to provide that Defendant would finish the work by December 13, 2013. Complaint [#1] at ¶ 53. By December, though, Defendant still had not corrected the aforementioned problems. Nevertheless, in January 2014, Plaintiff agreed to have Defendant make one last attempt to fix the problems. However, after two additional weeks, Defendant still had not resolved the issues. Consequently, Plaintiff consulted with Oracle, which examined the website and concluded that it was irretrievably flawed, due to the fact that Defendant had incorporated "excessive and unnecessary customization resulting in decreased functionality and subpar performance." *Id*. at ¶ 68. Oracle further indicated that it "was not feasible to attempt to fix the [problems with the intranet site]." *Id*.

On May 20, 2014, Plaintiff commenced this action. The Complaint [#1] purports to assert three causes of action: 1) breach of contract; 2) breach of the implied covenant of good faith and fair dealing; and 3) negligent misrepresentation. Plaintiff's theory is that Defendant knew that it was incapable of fixing the serious underlying problems with the intranet, but nevertheless misled Plaintiff into believing that it could do so. On this point, the pleading contains the following statements that are designed to show intentional wrongdoing and/or bad faith by Keste:

> 43. Keste did not disclose to Constellation that Keste lacked the capacity or ability to correct the fundamental performance issues and defects presented by Keste's work.

> 44. As a result, and unbeknownst to Constellation, Constellation was induced and lulled into expending additional time, money, resources, and effort on a Website whose design by Keste could not support the requirements and needs that Constellation had communicated and Keste had accepted.
>
> ***
>
> 54. Upon information and belief . . . Keste was aware that it did not have the resources or ability to fix the outstanding performance issues within the time frame that it promised, and that it could not fix the outstanding Website issues because its coding and design work would not support the [level of] performance it was agreeing to deliver.
>
> 55. Constellation relied upon Keste's false representations that it would and could fix the outstanding performance issues and that it had the resources, special expertise and experience in Oracle's technology to do so.
>
> ***
>
> 86. Keste did not act in good faith when it stated it would fix the outstanding 'bugs' and performance issues, when it could not and would not be able to do so, and it knew that it could not do so[.]
>
> ***
>
> 92. Keste incorrectly and falsely represented to Constellation that Keste had the ability and resources to fix the bugs and performance issues [that were] inherent in Keste's design of the Project.

Complaint [#1] at ¶¶ 43-44, 54-55, 86, 92.  As for relief, the pleading demands, *inter alia*, "compensatory and consequential damages," and "reasonable attorney's fees."

On July 14, 2014, Defendant filed the subject motion to dismiss [#10].  The motion pertains to "certain damages claims in the Complaint," which purportedly are "in direct contravention of the express terms of the [parties' contract]." Def. Memo of Law [#10-3] at p.2.  Specifically, Defendant contends that paragraphs 7(a) and 7(b) of the contract, set forth above, "limit[ ] Constellation's recovery to those sums that Constellation paid to Keste[.]" *Id*. at p. 4.

5

In response, Plaintiff first argues that Defendant's motion is procedurally defective, since damages claims are not a proper subject of a rule 12(b)(6) motion to dismiss. *See*, Pl. Memo of Law [#20] at p. 1 (Stating that a 12(b)(6) motion "must be directed at a cause of action, and not a requested remedy."). Alternatively, Plaintiff contends that the "enforceability of such a provision [limiting damages] is an issue of fact" that cannot be resolved at the pleading stage, and that the pleading "sufficiently alleges grossly negligent and bad faith conduct" that, under New York State law, negates a contractual limitation on damages. *Id*.

On October 23, 2014, counsel for the parties appeared before the undersigned for oral argument of the motion.

## DISCUSSION

*Motion to Dismiss*

Defendants have moved to dismiss for failure to state a claim, and the standard for such motions is well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d

Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint,[1] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

*Defendant may move under Rule 12(b)(6) to dismiss damages claims*

As the Court indicated during oral argument, it disagrees with Plaintiff's argument that damages claims should not be dismissed at the pleading stage. In that regard, the Court is aware of cases that are consistent with Plaintiff's position. *See, e.g., Alevsky v. GC Services Limited Partnership*, No. 13-CV-6793 (JG), 2014 WL 1711682 at *1 (E.D.N.Y. Apr.

---

[1] The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

30, 2014) ("[A]s a general matter, damages are not an element of a cause of action. A Rule 12(b)(6) motion therefore cannot challenge the demand for relief, since that motion tests the legal sufficiency of allegations (i.e., the 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed.R.Civ.P. 8(a)(2), not the request for relief (which need only be 'a demand for the relief sought,' Fed.R.Civ.P. 8(a)(3)."). Nevertheless, the Court is also aware of decisions in which courts have dismissed damages claims under Rule 12(b)(6), as well as decisions of the Second Circuit Court of Appeals, affirming such dismissals, that do not hint at the alleged procedural bar upon which Plaintiff relies. *See, e.g., Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006) ("The district court dismissed under Rule 12(b)(6) New Globecon's claims for consequential damages, including attorneys' fees, resulting from Hartford's refusal to compensate it for Old Globecon's losses. We affirm the district court's decision."). Consequently, the Court finds that it can properly consider Defendant's motion on the merits.

### *Clauses limiting damages do not apply to breaches involving bad faith or gross negligence*

The subject contract contains damages limitation clauses that, if enforced, would bar Plaintiff from recovering more than what it paid Defendant. However, Plaintiff contends that the clauses are unenforceable, since Defendant either acted intentionally with bad faith, or acted with gross negligence. Although the parties dispute the applicability of the clauses, neither party contends that the clauses are ambiguous, or that the subject agreement is unenforceable generally.

Although New York State law generally recognizes contractual clauses limiting damages,[2] such clauses cannot insulate a party from damages resulting from a breach that was caused by either gross negligence or bad-faith conduct:

> [A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances. Under announced public policy, it will not apply to exemption of willful or grossly negligent acts.
>
> More pointedly, an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, maliciousFN4 or prompted by the sinister intention of one acting in bad faith.FN5 Or, when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit.
>
> > FN4  Malice, in law, is a state of mind intent on perpetrating a wrongful act to the injury of another without justification.
> >
> > FN5  Bad faith, the mirror image of good faith, connotes a dishonest purpose.
>
> In either event, the policy which condemns such conduct is so firm that even when, in the context of the circumstances surrounding the framing of a particular exculpatory clause, it is determined, as it was by one of the interrogatories here, that the conduct sought to be exculpated was within the contemplation of the parties, it will be unenforceable.

*Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384 -385 (1983) (citations omitted). Consequently, if the Complaint plausibly pleads either bad-faith conduct or gross negligence, Defendant's motion must be denied.

---

[2] *See, Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 18 N.Y.3d 675, 682-683, 967 N.E.2d 666 (2012) ("As a general rule, parties are free to enter into contracts that absolve a party from its own negligence or that limit liability to a nominal sum.") (citations omitted).

*The Complaint does not plausibly plead bad-faith conduct or gross negligence*

The Complaint, however, does not contain factual allegations that plausibly indicate that the damages limitation clause should not be enforced. On this point, only sufficiently egregious conduct will negate such a clause:

> New York Courts set the bar quite high in placing misconduct within the exceptions, demanding nothing short of a compelling demonstration of egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts.
> ***
> When a contract is between two sophisticated parties the conduct must evince a reckless disregard for the rights of others, or be of a kind that smacks of intentional wrongdoing for a court to conclude that a limitation of liability provision is unenforceable.

*Myplaycity, Inc. v. Conduit Limited*, No. 10 Civ. 1615(CM), 2011 WL 3273487 at *7, 8 (S.D.N.Y. Jul. 29, 2011) (citations and internal quotation marks omitted). An example of this can be seen in *Conaghi, U.S.A., Ltd. v. Jeweler's Protection Services, Ltd.*, 81 N.Y.2d 821 (1993), wherein a jewelry security company installed a security system in an art gallery, but neglected to place an alarm on the building's skylight, resulting in the theft of ten million dollars worth of artwork. Surprisingly, the New York Court of Appeals held that although the security company was at fault, it was nevertheless entitled to the protection of a contractual provision absolving the company from liability for negligence, since the conduct did not rise to the level of gross negligence:

> Used in this context, 'gross negligence' differs in kind, not only degree, from claims of ordinary negligence. It is conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing.

> Colnaghi's allegations do not meet this standard. The failure to wire a skylight, while perhaps suggestive of negligence *or even 'gross negligence' as used elsewhere*, does not evince the recklessness necessary to abrogate Colnaghi's agreement to absolve Jeweler's from negligence claims.

*Id.* at pp. 823-824 (emphasis added, citations omitted); *see also, Ace Securities Corp. Home Equity Loan Trust v. DB Structured Products, Inc.*, 5 F.Supp.3d 543, 556 (S.D.N.Y. 2014) ("Contractual nonperformance that is merely in a defendant's economic self-interest does not suffice [to show gross negligence or willful misconduct], even if it is intentional. Repeated incantations of the word 'willful' do not magically transform an economically motivated breach into the *egregious conduct* required to negate an unambiguous contract term negotiated by sophisticated parties.") (emphasis added, citations omitted).

In Plaintiff's complaint, the allegations of intentional wrongdoing, set forth above, do not plausibly plead the type of egregious conduct that is required to set aside a clause limiting damages. In that regard, the pleading insists that Defendant knew that it could never provide an intranet website that would meet Plaintiff's requirements, and that its statements to the contrary were therefore misleading. However, those allegations are entirely conclusory, and fail to plausibly suggest that Defendant actually had such knowledge or intent. To the contrary, the pleading merely suggests that Defendant made too many modifications to the Oracle software, *in an attempt to meet Plaintiff's specifications*, without realizing that such excessive modification would make the product slow and unwieldy. Nor is there any factual allegation suggesting that Defendant did not honestly believe that it would eventually be able to fix the problems. Furthermore, the fact that Oracle later concluded that Defendant's product was hopelessly over-complicated, and that it would be more cost effective to start over, does not plausibly suggest the type of recklessness or bad

faith on Defendant's part that is necessary to defeat a damages limitation clause. *See, Nirvana Intern., Inc. v. ADT Sec. Services, Inc.*, 525 Fed.Appx. 12, 15 (2d Cir. May 15, 2013) (Affirming dismissal of contractual claim for damages exceeding those permitted by contract's damages limitation clause, where pleading did not plausibly suggest sufficiently egregious conduct); *Bayerische Landesbank, New York Branch v. Aladdin Capital Management*, 692 F.3d 42, 61 (2d Cir. 2012) ("Simply adding the conclusory word "reckless" to Aladdin's trading does not transform an ill-advised investment decision into something approaching intentional misconduct."); *American Auto. Ins. Co. v. Rest Assured Alarm System, Inc.*, 786 F.Supp.2d 798, 808 (S.D.N.Y. 2011) ("Here, the Complaint alleges no more than Rest Assured's failure to properly install, monitor, test, and repair the alarm system, coupled with a conclusory statement that Rest Assured was "reckless[ ] and/or gross[ly] negligen[t]."). Consequently, the Complaint fails to state a claim for contractual damages exceeding those that are envisioned in, and limited by, paragraphs 7(a) and 7(b) of the contract, as set forth above.

      Plaintiff nevertheless maintains that it has plausibly stated gross negligence and/or bad faith, relying heavily on *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 18 N.Y.3d 675, 967 N.E.2d 666 (2012) ("*Abacus*"). However, the *Abacus* decision involved an entirely different, and more egregious, set of facts. More specifically, the defendants in *Abacus* installed security systems in the plaintiff bank, but then failed to adequately monitor the systems, or to notify the plaintiff, even though it was evident that someone was making repeated attempts to disable the system:

> Abacus further alleges the defendants knew for weeks, if not months, that the security systems in place were not working in that they were generating a series of flaws, malfunctions and false alarms. For example, in the three

> months preceding the burglary there were, according to an expert's affidavit Abacus submitted in opposition to defendants' motions, 17 phone line failures and a number of other occurrences that were consistent with an intruder cutting the phone line and should have created an alarm event. Abacus asserts that not only did defendants fail to investigate these malfunctions, but they failed to notify anyone at the branch of the problem.
>
> ***
>
> Abacus has alleged much more than mere failure to install a proper working alarm system and inspect it. Abacus alleges that both defendants had knowledge—for weeks, if not months—that the equipment had been malfunctioning. Moreover, Abacus asserts that defendants not only failed to investigate the source of their equipment malfunction, but they failed to put anyone at the branch on notice of the potential security breach. Of course, these allegations may not be proved, or may be shown by defendants' evidence to be less significant than they seem; but on this record, plaintiffs have alleged the type of conduct that smacks of intentional wrongdoing and evinces a reckless indifference to the rights of others.

*Id.*, 18 N.Y.3d at 681, 683-684 (citation and internal quotation marks omitted). Consequently, the *Abacus* decision is too factually dissimilar to support Defendant's argument.

## CONCLUSION

Defendant's motion [#10] for partial dismissal is granted, in that the Complaint fails to state a claim for contractual damages exceeding those that are permitted by paragraphs 7(a) and 7(b) of the contract.

SO ORDERED.

Dated:  November 13 , 2014
        Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge